IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| EDWARDLEE JOHNSON, | ) | CASE NO.1:16-CV-00632-CAB |
| | ) | |
| Petitioner, | ) | JUDGECHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| CHRISTOPHER J LAROSE, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Respondent. | ) | |

**Introduction**

Before me[1] is that portion of Edwardlee Johnson's petition for a writ of habeas corpus under 28 U.S.C. § 2254[2] that was remanded for reconsideration by order of the Sixth Circuit.[3] That order vacated the district court's order that had denied Johnson's habeas petition insofar as it claimed that his trial counsel was ineffective for not objecting to the

---

[1] ECF No. 31. The matter was referred to me by United States District Judge Christopher A. Boyko to conduct proceedings consistent with the Sixth Circuit's order of remand.

[2] ECF No. 1.

[3] ECF Nos. 27, 28.

prosecution's alleged misuse and manipulation of cell phone records.[4] It further directed that the matter be remanded and that district court reconsider this claim after the State filed the transcripts.[5]

Specifically, the Sixth Circuit stated that "without the trial transcripts, we cannot verify the exact nature of the alleged misconduct, assess the possible effects of the prosecution's conduct on the jury's verdict, and decided whether the state court's resolution of Johnson's ineffective assistance of counsel claim was reasonable."[6]

The State filed the relevant transcripts while the appeal to the Sixth Circuit was pending.[7]Subsequent to the remand, the parties have filed supplemental briefs addressing the issue as set forth in the Sixth Circuit's order.[8]For the reasons that follow, I will recommend that this claim be denied on the merits since the decision of the state appeals court was not an unreasonable application of the clearly established federal law of *Strickland v. Washington*.[9]

**Facts**

---

[4] ECF No. 26 at 2 (Sixth Circuit Order of Nov. 8, 2018).
[5] *Id*.
[6] *Id*.
[7] *Id*.
[8] ECF Nos. 32 (Johnson's brief); 33 (State's brief).
[9] 466 U.S. 668 (1984).

The following is a summary of the facts relevant to the present proceeding. A more complete recitation of the facts is given in the original Report and Recommendation.[10]

In the early morning hours of June 12, 2012, the body of Carlos Coates was found shot through the head in the doorway of an east-side Cleveland house by Cleveland police responding to a call of women fighting.[11]After a lengthy six-months investigation,[12]police determined that during the evening of June 11, Coates had been with a group of people when arguments and fights began,[13] including a fight between Tamera Coleman and Dionne Green.[14]Coates became involved in this argument, during which Coates hit Green, which prompted Coleman to strike Coates.[15]Upset at Coates,[16] Coleman then called or texted Johnson,[17] whom she considered like a brother,[18] who said he would come up to Cleveland from Akron.[19]Coleman and Green then went to a bar where they discussed what happened with Coates and waited for Johnson.[20]

---

[10] ECF No. 17. The recitation of the facts by the Ohio appeals court, as quoted in the report and recommendation, covers 13 pages. *Id*. at 2-15.

[11] *Id*. at 2, 15.

[12] *Id*. at 3.

[13] Id. at 6.

[14] *Id*. at 3.

[15] *Id*. at 4.

[16] *Id*.

[17] *Id*. at 4, 9.

[18] *Id*. at 9.

[19] *Id.* at 4, 6, 8.

[20] *Id*. at 13.

As Coleman was returning from the bar around 2 a.m., she met up with Miekal Gale, her boyfriend of several years, at a nearby gas station.[21]Coleman told Gale that she and Coates had "gotten into it" and that Johnson was coming from Akron to "f**k him [Coates] up."[22]

Eventually, Coleman, Gale, Coates and Johnson encountered each other on the porch of Green's house on East 169th Street.[23]Gale and Coates began physically fighting over what had occurred between Coates and Coleman.[24]Johnson then appeared and, standing beside Gale, shot Coates.[25]According to Gale, Johnson immediately admitted he shot Coates, although professing that he didn't mean to.[26]

As the Report and Recommendation sets forth in greater detail, Johnson was indicted and tried on charges of murder, felonious assault and having a weapon while under disability.[27]After being found guilty by a jury of murder and felonious assault, and by the court of the weapons charge, as well as prior-conviction and repeat-violent-offender specifications, he was sentenced to an aggregate term of twenty-five years to life in prison.[28]

---

[21] *Id*. at 8.

[22] *Id*. at 9.

[23] *Id*.

[24] *Id*.

[25] *Id*. at 9-11.

[26] *Id*.

[27] *Id*. at 16.

[28] *Id*. at 16-17.

**Federal Habeas Petition**

After recounting the proceedings on direct appeal[29] and regarding a post-conviction petition,[30] the Report and Recommendation set forth the four grounds for relief presented in the federal habeas petition.[31] The State filed the return of the writ, but not the trial transcripts.[32] Johnson filed a motion to supplement the record by ordering the State to file the transcripts, but the motion was denied prior to the issuance of the Report and Recommendation.[33]

The R&R then recommended first that Ground One – alleging a Confrontation Clause violation arising from Gale's testimony recounting a statement Coleman had made to him – should be dismissed as non-cognizable and procedurally defaulted.[34]

Next, the R&R recommended that Ground Two – asserting that a Due Process violation occurred when the prosecution altered, manipulated, and improperly used Johnson's cellphone records during closing argument – should be denied on the merits because the state appellate court decision in this respect was not an unreasonable application of the clearly established federal law pertaining to prosecutorial misconduct,

---

[29] *Id*. at 17-18.
[30] *Id*. at 18.
[31] *Id*. at 19.
[32] ECF No. 29 at 2.
[33] *Id*.
[34] ECF No. 17 at at 33.

which requires that any purported error be reviewed as to whether it had a substantial and injurious effect or influence in determining the jury's verdict.[35]

Third, the R&R recommended that Ground Three – asserting ineffective assistance of trial counsel in three respects – be denied on the merits because the Ohio appellate court decision in this instance was not an unreasonable application of the clearly established federal law stated in *Strickland v. Washington*, 466 U.S. 668 (1984).[36]

Finally, the R&R recommended that the fourth ground for relief – which alleged violation of Due Process rights through cumulative errors – should be dismissed as non-cognizable.[37]

The district court then adopted the R&R in full, dismissing the petition in part and denying it in part.[38]The district court further declined to issue a certificate of appealability (COA).[39]Johnson, for his part, then filed an application for a COA with the Sixth Circuit.[40]In that application, Johnson he sought a COA only as to his ineffective assistance of counsel claim and the district court's refusal to order the filing of the trial transcript.[41]As

---

[35] *Id*. at 33-38.
[36] *Id.* at 38-42
[37] *Id*. at 43.
[38] ECF No. 21.
[39] ECF No. 29 at 2 (citing record).
[40] *Id*. (citing record).
[41] *Id*. (citing record).

noted above, the Sixth Circuit granted a COA as to the ineffective assistance of trial counsel claim.[42]

Following the granting of the COA, as detailed earlier, the State filed the trial transcript.[43]The Sixth Circuit then issued the order, described more fully above, remanding the matter back to this Court for further proceedings.[44]The magistrate judge then ordered supplemental briefs to be filed[45] and, after a reassignment of the magistrate judge,[46]the matter was referred to me.[47]

## Analysis

Both parties here agree[48] that the only issue to be decided on remand is whether Johnson's counsel was constitutionally ineffective for not objecting to a portion of the State's closing argument wherein the prosecutor "presented to the jury a whole set of facts which had not been established by the evidence – mainly, that the cell phone evidence placed Johnson at the scene, when in fact that was not established by the exhibits submitted to the jury."[49]

---

[42] *Id*. (citing record).
[43] *Id*. at 3 (citing record).
[44] ECF No. 26.
[45] ECF No. 29 at 3.
[46] Non-document entry of January 22, 2019.
[47] ECF No. 31.
[48] ECF No. 32 at 3 (Johnson); ECF No. 33 at 2 (State).
[49] ECF No. 1 at 29 (Ground Three).

As set out by Johnson in his supplemental brief, the introduction of the cell phone records of various parties – Johnson, Coleman and Gale[50] - were initially stipulated to by the parties at trial.[51] As Johnson further states in the supplemental brief, although the raw data was stipulated to, no witnesses testified as to the content of the cell records nor offered any interpretation of those records.[52]

## 1.    The Transcript of Closing Arguments

During the prosecution's initial closing argument, when discussing the aggravated murder charge against Johnson, she began discussing the element of "prior calculation and design" inherent in that charge.[53] Johnson was found not guilty of aggravated murder.[54]

As the prosecutor developed the argument as to "prior calculation and design" relating   to Johnson she references the evidence that:

> The defendant was receiving phone calls from Tamera Coleman informing [him] that she wants him to fuck [Coates] up, he [Johnson] was in Akron. He had a gun in his car. He drove up from Akron to East 169th Street. He proceeded to sit in that car and wait for them to come back.[55]

During the defense argument to the jury, counsel posited the theory that Johnson was being set up in this case by lies from the prosecution's witnesses.[56] One theme that

---

[50] Gale is identified in Johnson's supplemental brief as "Capone," (ECF No. 32 at 5) which was his street name. ECF No. 17 at 2 (quoting Ohio appeals court decision).
[51] ECF No. 32 at 5.
[52] *Id*.
[53] ECF No. 25 (transcript) at 1441.
[54] ECF No. 17 at 16 (citing record).
[55] ECF No. 25 at 1449.
[56] *Id*. at 1449-1460.

defense counsel returned to several times was that Coleman's phone call to Johnson was brief – only 26 seconds – and thus just long enough to request that he come to pick her up and not long enough to describe her altercation with Coates or suggest that Johnson attack Coates.[57]To that point, he also stated that it was Gale, not Coleman, who had called Johnson numerous times, suggesting that Gale was the real shooter and that Coleman was lying to protect him.[58]

Defense counsel also told the jury that the phone records were not subpoenaed until August, which meant that Johnson and Coleman had spent two months in jail as prime suspects – and giving statements – without having the opportunity to review the phone records.[59]Counsel invited the jury to look at the records themselves and notice two things: (1) that Coleman's call to Johnson was only 26 seconds and (2) that Gale called Johnson before Coleman did, and also called him two more times after that.[60]In the defense's theory, Gale's testimony, backed up by Coleman, that these calls from his phone were actually made by Coleman was a lie to deflect attention from Gale as the murderer.[61]

Defense counsel summarized his argument on how the cell records should be viewed by the jury in this way:

> Gale calls [Johnson] at 12:39. Gale calls [Johnson] ten minutes later, at 12:49.

---

[57] *Id*. at 1451, 1457.
[58] *Id*. at 1457-58.
[59] *Id*. at 1450.
[60] *Id*. at 1451.
[61] *Id*. at 1452.

You know, you can draw an inference based on a fact. The fact is supposed to be that Coleman, in a rage, convinces this guy [Johnson] to what he's doing in Akron, which is why his fiancee's getting pissed at him, too. But even though he's in hot water [with his fiancée] for not being home, when his god friend [Coleman] says you can come get me and the kids, he comes to do that. But you got to ask yourself, could you be talked into committing a murder in 26 seconds?

Well, maybe it was a follow up call. Maybe it's all those calls everyone is talking about.

There are more calls from [Gale] to [Johnson] than from [Coleman] to [Johnson].

I believe during the appropriate hours, Coleman talked to him three times.

Now, you're going to see a flurry of calls where [Johnson] is trying to reach [Gale] and [Coleman] 'cause he's driving up from Akron to pick these losers up, and he doesn't know where they are. Or he's calling them over and over and over and over and over and over, saying, do I still have to shoot him. Do you still want me to kill him? It's one of these two.[62]

Johnson alleges that the improper prosecutorial conduct then occurred during the State's rebuttal argument.[63]Specifically, Johnson points to the prosecution telling the jury that:

[Y]ou'll see the phone company records that I have labeled as – on the blowups are [the phone records of Johnson], in marker, at the top, [Johnson], that you can see just as – through the legend of where these towers are. You can see the travel. You can see it. And you can see him wait.[64]

I'll get to the phone records in a second. I'm not going to belabor it because I think there is going to be some enlightenment when I get to it. But the reality that this defendant sat there in wait is clear.[65]

---

[62] *Id*. at 1457-58.
[63] ECF No. 32 at 5-8.
[64] ECF No. 25, Attachment at 1471-72.
[65] *Id*. at 1465.

Only at this point does the prosecution show the exhibits with the cell phone records.

> The phone records indicate that this is St. Clair Avenue right here, 177 block. You see it from the legend of the cell phone towers. They're marked.
>
> And I blew up some of the State's exhibits.
>
> These two columns. The first cell site, second cell site.
>
> So, we're gonna ask ourselves, who travelled for what reason, who waited, and who waited some more.
>
> You're gonna conclude, I have no doubt in my mind that you'll conclude, that Johnson – it is agreed upon, the defense mentioned it opening statement, there isn't any dispute that this man over here at the table, Mr. Johnson, waited, or rather was on the scene. He was there. There's no dispute that he was there. You have to ask yourself why he was there.[66]

The prosecution then discusses at some length [four pages of transcript] that Johnson's presence at the scene with a gun, the interaction of the other witnesses at the scene, Gale not being armed and the consistency of the stories by all other witnesses all logically point to Johnson as the killer.[67]Then the prosecutor comments briefly on some of Coleman's testimony.[68] Only then does the prosecution return to the phone records with a detailed, lengthy [10 transcript pages, interrupted once by a recess] explanation of each phone call, its time, location and participants.[69]

---

[66] *Id*. at 1466.
[67] *Id*. at 1466-70.
[68] Id. at 1470
[69] *Id*. at 1471-81.

11

As Johnson here notes,[70] part of that explanation to the jury included informing them that the prosecution "blew up a few of the relevant pages,"[71] had "cut the top off" some pages because "not every page has the same categories in the columns,"[72] and had stated that the call times on the records was Pacific daylight time, which is three hours different from Eastern time.[73] As Johnson further notes, right before the recess was called, defense counsel said, "Your Honor," to which the court invited the parties to approach the bench.[74] No objection was offered on the record and, after a sidebar, the recess was taken.[75]

After returning from the recess, the prosecution concluded the rebuttal statement by clearly placing the phone records at the core of its case for aggravated murder:

> Tell me that's not circumstantial evidence of lying in wait, ladies and gentlemen. Tell me that's not circumstantial evidence of lying in wait with a firearm.[76]

## 2. The Ohio Appeals Court Decision

The Ohio appeals court analyzed the argument arising from the prosecution's use of enlarged or altered cell phone records during the prosecution's closing argument in two places. First, as to whether the prosecution's actions amounted to prosecutorial misconduct

---

[70] ECF No. 32 at 7.
[71] ECF No. 25, Attachment at 1472.
[72] *Id.*
[73] *Id.*
[74] *Id.* at 1479-80.
[75] *Id.* at 1480.
[76] *Id.* at 1481.

under the standard of whether this conduct deprived Johnson of a fair trial. Second, it re-examined the issue under the rubric of whether defense counsel's failure to object to the use of these altered records amounted to ineffective assistance of counsel.

In the first instance, the Ohio court concluded that:

> While the enlarged cell phone records, manipulations thereof, and explanations were questionable, we cannot find any harm to Johnson, nor has Johnson explained how these enlargements were prejudicial or affected the outcome of the case. First, our review of the record shows that the state used the cell phone records to support its theory that Johnson's conduct was premeditated with prior calculation and design, to prove their case of premedicated murder. The jury found Johnson not guilty of aggravated murder; thus, it can be inferred that they felt Johnson's conduct was not premeditated, and any inference about him "lying in wait" was harmless.

> Moreover, the defense theory of the case was that Johnson was present at Green's house that evening, but that he was not the shooter. Therefore, the route that Johnson took from Akron to Cleveland was irrelevant. Finally, because the jury acquitted Johnson of aggravated murder, Johnson's challenge to the trail court's denial of his request for a mistrial is without merit.[77]

As to the ineffective assistance of counsel issue, the Ohio appeals court, relying on its earlier conclusion that there was no harm to Johnson in the State's closing arguments insofar as they referenced the altered phone records, stated the following:

> In his final argument, Johnson maintains that counsel was ineffective for failing to object to the state's closing argument, specifically, about the cell phone records. Johnson also contends that counsel should have requested a curative instruction after their use in closing argument. As discussed under Johnson's fourth

---

[77] ECF No. 17 at 35 (quoting state court opinion).

assignment of error, the state was unsuccessful in its use of the enlarged cell phone records. Therefore, the failure to object was harmless.[78]

The original R&R, as well as the district court opinion that adopted the R&R, both concluded that the state court decision was neither contrary to, nor an unreasonable application of the clearly established federal law of *Strickland*.[79]

The remand order from the Sixth Circuit was specific in noting that "without the trial transcripts, we cannot verify the exact nature of the alleged misconduct, assess the possible effect of the prosecution's conduct on the jury's verdicts and decide if the state court's resolution of Johnson's ineffective-assistance claim was reasonable."[80]

## Conclusion

In light of that specific mandate on remand, I have set forth in some detail above the exact language in the prosecutor's closing argument to which Johnson objects, and have placed those remarks in the broader context of each side's theories of the case. I recommend finding first that the Ohio court's summary characterization of both the allegedly objectionable language and its basis for concluding that it was harmless are fully supported by the complete transcript, as well as the applicable law (which was never questioned in the remand order).

---

[78] *Id*. at 39 (quoting state court opinion).
[79] ECF Nos. 17 at 42 (R&R), 21 at 4-5, 7.
[80] ECF No. 26 at 2.

 I then finally recommend that the remanded portion of Johnson's habeas petition be denied in full for the reasons stated above.

IT IS SO RECOMMENDED.

Dated: January 12, 2022                    s/William H. Baughman Jr.
                                           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Any party may object to this Report and Recommendation.  To do so, you must serve and file your objections with the Clerk of Court within 14 days after being served with this Report and Recommendation.  If this document is being served on you by mail, service by mail is complete when the document is mailed, not when you receive it.  If you fail to serve and file your objections within this 14-day time period, you forfeit your rights on appeal, absent a showing of good cause for such failure.